IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | § |
| | § |
| Plaintiff-Respondent, | § |
| | § Civil No. 4:16-2855 |
| V. | § Crim. No. 4:11-cr-01-6 |
| | § |
| Miguel Suarez Ramirez, | § |
| | § |
| Defendant-Movant. | § |

## MEMORANDUM AND RECOMMENDATION

Before the Magistrate Judge in this federal habeas corpus proceeding pursuant to 28 U.S.C. § 2255 is Movant Miguel S. Ramirez's § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 563)[1], Amended § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 598), Amended or Supplemented § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 601), and the United States' Answer and Motion to Dismiss Movant's § 2255 Motion (Document No. 597). After reviewing Movant's § 2255 Motion and Amended § 2255 Motions, the Government's Answer and Motion to Dismiss, the record of the proceedings before the District Court in the underlying criminal case and on appeal, and the applicable case law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Movant Miguel S. Ramirez's § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Document No. 563) and Amended § 2255 Motions to Vacate, Set Aside, or Correct Sentence (Documents No. 598 and 601) be DENIED, and the United States' Motion to Dismiss (Document No. 597) be GRANTED.

---

[1] Miguel Suarez Ramirez's Motion to Vacate, Set Aside, or Correct Sentence can be found at Document No. 1 in Civil Action 4:16-2855 and at Document No. 563 in Criminal Action No. 4:11-cr-01-6. All further references to documents will refer to their numbering in Criminal Action No. 4:11-cr-01-6.

## I. Procedural History

Movant Miguel S. Ramirez ("Ramirez"), who is currently in the custody of the United States Bureau of Prisons, is seeking federal habeas corpus relief under 28 U.S.C. § 2255. This is Ramirez's first attempt at § 2255 relief.

On January 3, 2011, Ramirez was charged by Superseding Indictment with possession with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 (Count 1S), aiding and abetting attempted possession with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 18 U.S.C. § 2 (Count 2S), conspiracy to use and carry a firearm during and in relation to a drug trafficking crime, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846, as set forth in Counts One and Two, and to possess said firearm in furtherance of such crimes, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 924(o) (Count 3S), aiding and abetting others in knowingly and intentionally using and carrying a firearm, during and in relation to a drug trafficking crime, that is, violations of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846, as set forth in Counts One and Two, and did possess said firearm in furtherance of such crimes, in violation of 18 U.S.C. § 924(c)(1)(A) and § 2 (Count 4S), and with knowingly possessing, in and affecting commerce, a firearm which had been shipped in interstate and foreign commerce, after having been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1) (Count 5S). (Document No. 142). On September 7, 2012, Ramirez pleaded guilty, pursuant to a written Rule 11(c)(1)(A) & (B) Plea Agreement, to Counts 1S and 4S of the Superseding Indictment. (Document No. 178, Transcript of Rearraignment Hearing, Document No. 580).

At Ramirez's September 7, 2012, Rearraignment, the terms of the written Plea Agreement were summarized as follows by the Government:

> Mr. Donnelly: Certainly, Your Honor. The defendant will plead guilty to Counts 1 and 4 of the indictment and persist in that plea through sentencing, at which point the United States will move to dismiss the remaining counts of the indictment. . . . At the time of sentencing, the United States agrees not to oppose and joins in the recommendation for the full three points for acceptance of responsibility. The defendant agrees to waive his appeal rights of his conviction and sentence, both directly and collaterally. (Document 580, p. 4-5).

The written Plea Agreement specifically refers to relief under § 2255 and expressly states that Ramirez waives his right to seek § 2255 relief. (Document No. 178, p. 7 ¶ 10). The signed written Plea Agreement makes clear that Ramirez is pleading guilty freely and voluntarily (Document No. 178, p. 13 ¶ 22), and contains an Addendum, also signed by Ramirez, that states that he has "read and carefully reviewed every part of this plea agreement with my attorney, I understand this agreement and I voluntarily agree to its terms." (Document No. 178, p. 15). Moreover, the transcript of his Rearraignment hearing confirms that Ramirez understood the charges against him, the rights he would give up if he pleaded guilty, the possible penalties, the sentencing process, that he had discussed the written plea agreement and that he understood the terms, and that he was waiving both his right to appeal and to collateral review. (Document No. 580, p. 5-15). The record further reflects that the Government summarized the facts that it was prepared to prove if the case proceeded to trial. (Document No. 580, p. 17-19). The Prosecutor stated:

> If this case went to trial, the United States would prove through witnesses, beyond a reasonable doubt, that sometime between October 5th, 2010, through December 2nd, 2010, all while in the Southern District of Texas, the defendant entered into a conspiracy to commit armed robbery of a drug dealer's stash house for the purpose of obtaining multiple kilograms of cocaine.
>
> On October 26th, 2010, and individual known as TiTi, Carlos Manuel Boria, Edwin Rivera-Otero, Eric Alberto Lewis, Marvin Cesar Carabali-Diaz, and Iris Yamileth Bonilla-Reyes, co-conspirators herein, met with an undercover agent from the Bureau of Alcohol, Tobacco, Firearms, and Explosives. The undercover posed as a disgruntled drug courier who regularly picked up loads of cocaine from various stash houses. The undercover advised all co-conspirators that there were generally between 20 to 30 kilograms of cocaine in the stash house and that the drugs would be protected by two individuals, one of whom would be armed. The undercover

noted the amount of drugs involved, the armed guards, and gave the co-conspirators an opportunity to back out if they did not want to proceed.

Boria took the undercover to a car occupied by Bonilla, where she handed Boria a bag containing police vests so the undercover could see. Boria indicated that the vehicle with the weapons was on the way, but there seemed to be some confusion. Shortly thereafter, the undercover explained he could not wait any longer and that he had to pick up his load of drugs.

On December 2nd, 2010, defendant, along with co-conspirators and Francisco Javier Rodriguez, met with the undercover for the purpose of conducting the armed robbery of cocaine.

Defendant arrived in a Dodge Journey, in which police located a Hi-Point .40 caliber pistol, a Kimber Arms .45 caliber pistol, zip-ties, and a police hat. Five firearms to be used for the robbery were collectively brought to the location by the defendant, co-conspirators, and Rodriguez. In addition to those found in the Dodge Journey, police recovered a Rossi .357 caliber revolver, a Charter Arms .38 caliber revolver, and Beretta Model 92, 9mm caliber pistol.

The defendant was dressed in police tactical vest, a badge, black pants, and black boots. All others involved, with the exception of Lewis and Bonilla, were dressed in some sort of clothing identifying themselves as police officers. Lewis and Bonilla were going to be the drivers of the two vehicles.

The undercover asked if they were armed, and Boria showed the undercover a firearm in the driver's side door compartment of the vehicle. The undercover explained to all of the suspects that they were merely waiting for the call from his source of cocaine supply.

Defendant, all co-conspirators, and Rodriguez surrounded the undercover and discussed the scenario for committing the armed robbery of cocaine. The undercover told the suspects there would be at least 20 to 30 kilograms of cocaine in the stash house. As all suspects were surrounding the undercover, there was discussion about the armed robbery, individual assignments, and how the plan would be carried out. There was discussion about the use of weapons to commit the robbery and which defendants would be responsible for certain acts.

Defendant, all co-conspirators, and Rodriguez were aware of the planned home invasion armed robbery for cocaine and were prepared to commit the robbery.

The defendants were then arrested and the firearms, as well as the zip-ties and additional clothing were located. After waiving his statutory rights, the defendant stated he was going to a meeting to talk about conducting a robbery of home containing narcotics. He said he dressed in police clothing in preparation. (Document 580 pp. 17-19).

In response, Ramirez confirmed the accuracy of the summary and his role in the offense. (Document No. 580 19). Prior to sentencing, a Revised Final Pre-Sentence Investigation Report ("PSR") was prepared. (Document No. 281). An Addendum to the PSR was also filed. (Document No. 283). Ramirez filed no objections to the PSR or the Addendum. The PSR shows that Ramirez had a base offense level of 34 under U.S.S.G. § 2D1.1(c)(3). Because Ramirez possessed a firearm, his offense level was increased by two levels under U.S.S.G. § 2D1.1(b)(1). Because Ramirez accepted responsibility for his activities, and did so timely, his offense level was reduced by three levels. However, because the instant offense was a controlled substance offense and Ramirez was 18 years or older at the time the offense was committed and his criminal history included a conviction for delivery of a controlled substance by actual transfer in the 185th District Court, Brazos County, Texas, Cause No. 0493781, and a conviction for aggravated assault in the 183rd District Court, Brazos County, Texas, Cause No. 0662845, Ramirez was deemed a career offender within the meaning of U.S.S.G. § 4B1.1. As a career offender, his offense level was determined under U.S.S.G. § 4B1.1, which resulted in no adjustment to offense level, but did mandate the use of 4B1.1(c)(3)'s sentencing range, because it is higher than 18 U.S.C. 924(c). With an adjusted offense level of 31, and with a criminal history category of IV, Ramirez had an advisory guideline sentencing range of 262 to 327 months. On June 7, 2013, Ramirez was sentenced to a term of imprisonment of 292 months, to be followed by a five-year term of supervised release, and to pay a $200.00 special assessment. (Document No. 581, Transcript of Sentencing Hearing, p. 10, 11). In imposing Ramirez's sentence, the Court stated:

> Appearing before the Court for sentencing is Carlos Marino Segura, who is also known as "Miguel Suarez-Ramirez" in the indictment, after having plead guilty to conspiracy to possess with intent to distribute 5 kilograms or more of cocaine and to use, carry and possess firearms in relation to and in furtherance of a drug-trafficking crime.

5

> Mr. Ramirez is a 45-year-old Colombian citizen with two prior felony convictions, a crime of violence and a controlled substance offense which qualify him as a career offender under the guidelines. He was on parole when he committed the instant offense and, as a result, he had an outstanding warrant issued by state parole authorities.
>
> Mr. Ramirez held an average role in the commission of the offense, as he was supposed to be part of an armed home invasion crew which intended to rob 30 kilograms of cocaine from a stash house. Further, he agreed to restrain any victims inside the house and he was dressed in police clothing to facilitate the offense. These aggravating factors were not taken into account in the guideline computation.
>
> In addition to the count to which he pled guilty, the investigation revealed that he had been using a false Puerto Rican identity and according to other criminal records he also used numerous aliases, dates of birth and Social Security numbers.
>
> I believe that a sentence at the middle of the applicable guideline range is necessary based upon the seriousness of the intended violent offense, the attempted impersonation of a police officer and the Defendant's use of false identities. I have considered the guidelines and find that a sentence within those guidelines is consistent with and takes into account the purposes of 18, United States Code, Section 3553(a). (Document No. 581, p. 8-10).

Judgment was entered on June 12, 2013. (Document No. 404). Ramirez filed an appeal. (Document No. 425). The Fifth Circuit Court of Appeals on August 9, 2013, issued an order dismissing appeal only as to Ramirez, for want of prosecution and failure to timely comply with the Court's notice to pay the filing fee for his appeal. (Document Nos. 425, 464). On November 7, 2013, Ramirez's judgment became final as the deadline for requesting Writ of Certiorari from the Supreme Court passed. Fed. R. App. P. 4(b)(1)(A). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Ramirez had one year from his judgement becoming final to timely file, or one year from the Supreme Court announcing a newly recognized right retroactively applicable to cases on collateral appeal. 28 U.S.C. §§ 2255(f)(1), (f)(3). On or about May 23, 2016, Ramirez timely filed a motion with the Court raising a claim challenging the enhancement of his sentence under the career offender provisions of the Sentencing Guidelines, relying on the holding of the

United States Supreme Court in *Johnson v. United States*, 135 S. Ct. 2551, 2563 (2016), which announced a newly recognized right made retroactively applicable to cases on collateral review by *Welch v. United States*, 136 S. Ct. 1257 (2016). (Document No. 563). On or about November 4, 2016, the Government responded to Ramirez' written motion as an unartfully plead *pro se* motion and requested that the Court send to Ramirez the applicable notifications concerning this Court's recharacterization as a § 2255 motion found in *Castro v. United* States, 540 U.S. 375 (2003), and to set a schedule for additional filings in the matter. (Document No. 573). The Court sent such notifications. Ramirez did not respond to the *Castro* warnings, and the letter was recharacterized as a § 2255 motion. On or about April 25, 2017, the Government answered and moved to dismiss Ramirez's § 2255 motion. The Government argues that Ramirez fails to state a viable claim under *Johnson*, and as a result is untimely. The Government further argues that Ramirez's knowing and voluntary waiver of his right to contest his conviction or sentence through a post-conviction proceeding bars his § 2255 motion. (Document No. 597). On or about May 8, 2017, Ramirez filed a motion to supplement his § 2255 motion under Fed. R. Civ. P. 15(b), claiming that his § 2255 motion should be held in abeyance pending the Supreme Court's review of *Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015). (Document No. 598). Additionally, on or about May 15, 2017, Ramirez filed a second motion to amend or supplement his § 2255 motion, adding claims based on the Supreme Court decision *Mathis v. United States*, 136 S. Ct. 2243 (2016), and two recent Fifth Circuit decisions, *United States v. Hinkle*, 832 F.3d 569 (5th Cir. 2016), and *United States v. Tanksley*, 854 F.3d 284 (5th Cir. 2017). (Document No. 601).

**II. Discussion**

    A. Ramirez's Waiver of Right to Collaterally Challenge Conviction and/or Sentence

    The Government argues that Ramirez's § 2255 Motions should be dismissed because he

waived his right to collaterally challenge his conviction and/or sentence. A defendant's wavier of his statutory right to collaterally challenge his conviction with a motion to vacate, set aside, or correct sentence under 28 U.S.C., § 2255, like a waiver by a defendant of his right to appeal, is generally enforceable if the waiver is both knowing and voluntary. *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994) (enforcing defendant's voluntary and knowing waiver of a § 2255 motion). In this case, the record shows that Ramirez, as part of his written Plea Agreement, waived his right to appeal, and he also waived his right to collaterally challenge his conviction and/or sentence. (Document No. 178, p.7). In addition, at his Rearraignment Hearing, the Court engaged in an extended colloquy to ensure that Ramirez was competent to participate in the Rearraignment proceedings, understood the offense to which he was pleading guilty, the maximum sentence he faced, and the rights he was giving up by virtue of pleading guilty. (Transcript of Rearraignment, Document No. 580, 3-20). The record further shows that the Court questioned Ramirez about the waiver provisions. (Document No. 580, p.13). Given Ramirez's statements on the record, which carry a strong presumption of verity, *Blackledge v. Allison*, 431 U.S. 63, 74 (1977), that he had read and discussed the written Plea Agreement with his counsel, that he understood the statutory and constitutional rights that he was waiving, that he understood the possible range of punishment and how his sentence would be determined, and that he understood that he waived his right to appeal and to file a post-conviction proceeding, Ramirez has not shown that his plea was not counseled, knowing, and voluntary, and upon this record, Ramirez's waiver of his right to collaterally attack his conviction with a § 2255 Motion is valid and should be enforced. It serves as a bar to the instant § 2255 motions being considered by the Court.

B. Ramirez's *Johnson* claims

Even assuming that Ramirez had not waived his right to file a § 2255 motion, his claims

fail as a matter of law. Ramirez, relying on the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015) and *Welch v. United States*, 136 S. Ct. 1257 (2016), argues that his conviction is unconstitutional. Ramirez argues that his sentence based on his being deemed a career offender under U.S.S.G.§ 4B1.1 is improper based on the reasoning in *Johnson*. The Government argues that Ramirez's *Johnson* claim fails because the Supreme Court's decision in *Johnson* does not affect Ramirez's career offender status under U.S.S.G. § 4B1.1. The Magistrate Judge agrees.

Federal law prohibits felons from possessing firearms. *See* 18 U.S.C. § 922(g)(1). This offense is generally punishable by up to 10 years' imprisonment, *see* 18 U.S.C. § 924(a)(2), but under that Armed Career Criminal Act ("ACCA" or "Act"), a felon in possession of a firearm who has three previous convictions for violent felonies or serious drug offenses *may* be imprisoned for life, and *must* be imprisoned for 15 years, *see* 18 U.S.C. § 924(e). The ACCA defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year . . . that—(i) has as an element the use, attempted use, or threatened use or physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S § 924(e)(2)(B). The last part of the definition, "otherwise involves conduct that presents a serious potential risk of physical injury to another" has been known as the residual clause. *Johnson*, 135 S. Ct. at 2556. In *Johnson*, the Supreme Court determined that the definition of "violent felony" under the residual clause of the ACCA is unconstitutionally vague and that imposing an increased sentence under the residual clause of the ACCA violates a defendant's right to due process. The holding in *Johnson* applies only to the residual clause definition of "violent felony." The Supreme Court made clear that its decision "does not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of violent felony." *Id.* at 2563. On April 18, 2016, the

9

Supreme Court held that *Johnson* applies retroactively to cases on collateral review. *Welch v. United States*, 136 S. Ct. 1257, 1260-68 (2016). Since then, various other provisions of 18 U.S.C. § 924, including § 924(c), and provisions of the United States Sentencing Guidelines, have been challenged on the same due process grounds as that in issue in *Johnson*. While the Supreme Court has yet to address the due process challenges to like-worded *statutory* provisions, in *Beckles v. United States*, 137 S. Ct. 886 (2017), the Supreme Court held that the type of due process, void for vagueness challenges at issue in *Johnson* could not be made to like-worded provisions of the Sentencing Guidelines. *Id* at 892-895. Here, as argued by the Government, *Johnson* does not directly or indirectly apply to Ramirez's conviction and/or sentence. Ramirez pleaded guilty to possession with intent to distribute a controlled substance (cocaine base). He was not sentenced under the ACCA. Ramirez was sentenced under the career offender provisions of the Sentencing Guidelines, having two prior qualifying offenses under U.S.S.G. § 4B1.1. He had two felony controlled substance offenses in Brazos County, Texas. (Document No. 281, ¶¶ 89, 90). In *Beckles,* the Supreme Court established that the Guidelines are not subject to a void-for-vagueness challenge under the Due Process Clause of the Fifth Amendment. *Beckles v. United States*, 137 S. Ct. 886, 897 (2017) ("Because the advisory Sentencing Guidelines are not subject to a due process vagueness challenge, § 4B1.2(a)'s residual clause is not void for vagueness."). None of the provisions for which Ramirez was convicted and sentenced include language that is similar or identical to the residual clause of the ACCA–the only provision that *Johnson* deemed unconstitutional or any arguable extension based on *Johnson*. Thus, Ramirez has not stated a viable challenge to his conviction/sentence based on *Johnson*.

To the extent Ramirez attempts to state a claim based on *United States v. Gonzalez*, 484 F.3d 712 (5th Cir. 2009), in his first amendment to his § 2255 motion, his reliance on *Gonzalez* is

misplaced because the statute under which Ramirez was convicted does not include the offer to sell language that *Gonzalez* found issue with, and thus the holding in *Gonzalez* does not govern Ramirez's conviction and sentence enhancement. *Gonzalez*, 484 F.3d at 715.

Moreover, notwithstanding the fact that the constitutionality of § 16(b) based on *Johnson* is currently under review by the Supreme Court in *Lynch v. Dimaya*, 137 S. Ct. 31 (2016), Ramirez was not sentenced based on a prior crime of violence conviction under § 16(b), nor under

3+§ 924(c)(3), which shares identical language with § 16(b), but based on his instant conviction of a federal drug trafficking offense, an enumerated aggravated felony under 18 U.S.C. §§ 924(c)(1)(A) and (2). Additionally, the Fifth Circuit Court of Appeals in *United States v. Gonzalez-Longoria*, 831 F.3d 670, 672-679 (5th Cir. 2016) (*en banc*), *petition for cert. filed* (Sept. 29, 2016), rejected a *Johnson* challenge on § 16(b) and the Fifth Circuit's decision controls. The pending decision in *Lynch* provides no justification to stay Ramirez's § 2255 motion.

C. Ramirez's *Mathis*, *Hinkle*, and *Tanksley* claims

Ramirez has moved to supplement his § 2255 motion to raise claims based on the U.S. Supreme Court's decision in *Mathis*, 136 S.Ct. 2243, and two recent decisions by the Fifth Circuit, *Hinkle*, 832 F.3d 569, and *Tanksley*, 854 F.3d 284, applying *Mathis* on direct appeal, not collateral review. Ramirez's reliance on *Mathis*, *Hinkle*, and *Tanksley* is misplaced. In *Mathis*, the Supreme Court held that, for the purpose of determining whether an offense qualifies as an ACCA predicate, the court takes a modified categorical approach, looking to the statutory elements of the offense rather than to the means of commission. *Mathis*, 136 S. Ct. at 2257. The Supreme Court noted in *Mathis* that is was not announcing a new rule and that its decision was dictated by decades of prior precedent. *Id.* The Fifth Circuit has held that *Mathis* did not announce a new rule of constitutional law that has been made retroactive to cases on collateral review. *See In re Lott*, 838 F.3d 522, 523

11

(5th Cir. 2016) (denying authorization to file a successive application under 28 U.S.C. 2255(h)(2), because *Mathis* did not set forth a new rule of constitutional law that has been made retroactive to cases on collateral review); *United States v. Bermea*, 2017 WL 821787, at *2 (S.D. Tex. Mar. 2, 2017). Because *Mathis* does not apply on collateral review, the holdings in *Hinkle* and *Tanksley* do not apply on collateral review either. *See Lopez v. United States*, 2017 U.S. Dist. LEXIS 51752 at *6, *7 (W.D. Tex. April 5, 2017). Because the deadline for filing a § 2255 motion expired on or about November 7, 2014, Ramirez's *Mathis*, *Hinkle*, and *Tanksley* claims are time barred. *See Id.*

### III. Conclusion and Recommendation

Based on the foregoing, it is

RECOMMENDED that the Government's Motion to Dismiss Movant's § 2255 Motion (Document No. 597) be GRANTED, and that Movant Rodney D. Ramirez's § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 563), Amended § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 597), and Motion to Amend or Supplement his original claim (Document No. 601) be DENIED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within 14 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), Fed. R. Civ. P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the fourteen-day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any

written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, Texas, this 28th day of June, 2017.

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE